## HORTICULTURAL DEVELOPMENT CO. v. LOXLEY FARMS CO. (1 Div. 375.)

(Supreme Court of Alabama. Dec. 17, 1925.)

1. Sales ⬉81.(5)—Contract for sale of nursery trees authorized seller to ship and to be entitled to payment within time specified in contract, whether trees ordered or not.

Contract for sale of nursery trees growing on designated farm at time of contract, delivery and payment to be made within three months from date thereof, *held* to authorize seller to ship trees and to be entitled to its money within time specified in contract, whether trees were ordered or not, and hence seller did not violate contract after buyer's request for delay by continuing to dig and pack trees, in absence of evidence showing that they were injured by being dug and packed prematurely for shipment within time specified in contract.

2. Appeal and error ⬉1033(5)—Giving and refusal of instructions not prejudicial to appellant, where only diminishing appellee's rightful recovery.

In action for breach of contract in sale of nursery trees, with seller being entitled to full amount of agreed price of all trees growing on designated tract, giving and refusal of special instructions *held* not prejudicial to appellant, where only effect of such rulings as applied by jury was to diminish appellee's rightful recovery.

⬉For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**3. Sales** ⬤⟹377—**Count, in action for breach of contract in sale of nursery trees, held sufficient.**

In action for breach of contract in sale of nursery trees, count alleging contract by reference, plaintiff's performance, and defendant's failure to pay, *held* sufficient.

**4. Appeal and error** ⬤⟹737—**Joint assignment of error in overruling demurrers to counts in complaint not sustained, where one of counts sufficient.**

Joint assignment of error, based on action of court in overruling demurrers to counts in complaint cannot be sustained, where one of counts is sufficient.

Appeal from Circuit Court, Mobile County; Saffold Berney, Judge.

Action by the Loxley Farms Company against the Horticultural Development Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Count 6 of the complaint is as follows:

"Plaintiff claims of the defendant $5,500 under a contract entered into between the plaintiff and defendant, a copy of which is attached to and embodied in the second plea of the defendant, and made a part hereof, the terms of which it has complied with, and which amount is due and unpaid."

The contract exhibited is in part as follows:

"This contract and sale, made and entered into on this the 10th day of October, 1923, by and between the Loxley Farms Company, a corporation, by J. W. Randall, its secretary and treasurer, as the party of the first part, and the Horticultural Development Company of Mobile by J. Lloyd Abbot, its ——, as the party of the second part, witnesseth:

"That the party of the first part, for and in consideration of the sum of $5,500, of which the sum of $1 has this day been paid to it in cash by the party of the second part, the balance of the purchase price to be paid by the party of the second part as hereinafter stipulated, hereby sells and agrees to deliver to party of the second part, upon the terms and conditions hereinafter set out, the following nursery stock, viz.: that block of Satsuma nursery trees, growing on the Moss farm of the party of the first part, budded in the fall of 1922 and spring and summer of 1923, said block of trees containing not less than 6,500 Satsuma trees of a height of one foot or better, and 4,000 Satsuma trees of a height of one foot or under, and dormant buds to the number of 800 or better. This does not include the dormant buds or nursery stock in block to south, which was budded in September, 1923, and later. The party of the second part hereby buys and agrees to pay for said nursery stock according to the terms and conditions of this contract."

The remainder of the contract follows in the opinion of the court.

Gordon & Edington, of Mobile, for appellant.

Counts 6 and 7 do not sufficiently assign the breach of contract. Woodward Iron Co. v. Frazier, 190 Ala. 305, 67 So. 430. To sustain a count on quantum meruit, there must be proof of value of the services rendered or materials furnished. Worthington v. McGarry, 149 Ala. 251, 42 So. 988. The contract was entire and recovery could be had only for full compliance with its terms. Hartsell v. Turner, 196 Ala. 299, 71 So. 658. One violating a contract is not entitled to recover thereunder. Varner v. Hardy, 209 Ala. 575, 96 So. 860. Appellee, having breached the contract by continuing to dig trees after order had been given to stop, cannot recover on common counts, without proof that he tendered, or that appellant accepted, the trees so dug. Carbon Hill Coal Co. v. Cunningham, 153 Ala. 573, 44 So. 1016; Maxwell v. Moore, 163 Ala. 490, 50 So. 882. If there is an expressed agreement, there can be no recovery on common counts, unless the contract has been fully executed and nothing remains but payment of money. McCormick v. Badham, 204 Ala. 2, 85 So. 401.

Webb & Shepard and Rickarby & Beebe, all of Mobile, for appellee.

Counsel argue that here was no error in the rulings treated and that authorities cited by appellant are inapt.

SAYRE, J. Appellee's complaint counted on three acceptances, amounting to $5,500, the agreed price of all the young Satsuma nursery stock then growing on a certain tract of land, estimated at about 11,000 plants. By amendment, the common counts were added at the trial and a special count alleging defendant's breach of a contract in writing for the sale and delivery of the plants on terms and conditions shown therein. We quote the more immediately important parts of the contract as follows:

"All stock sold hereunder to be properly dug, packed, and delivered to transportation company f. o. b. Loxley, Ala., by party of the first part, properly marked and addressed to party of the second part; all deliveries to be made in lots as ordered by party of the second part, but such orders to be made only during the period between November 1, 1923, and January 15, 1924; no order shall be for less than one-third the total number of trees covered by this contract; party of the first part shall have 10 days from receipt of order to make shipment. Payment shall be made by party of the second part to party of the first part in full on or before January 15, 1924. It is mutually agreed between the parties hereto, and made a part of this agreement, that all deliveries to be made hereunder by party of the first part are to be made subject to strikes, weather conditions, or other matters or contingencies beyond their control, and, in event of nondelivery for any of these causes, party of the first part shall not be held liable beyond extent of amount paid for undelivered order or proportionate part thereof unde-

---

⬤⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

livered. All other claims by party of the second part must be made within 10 days of receipt of shipment on which claim is made from the carrier."

Facts of necessary consideration may be fairly stated as follows: January 1, 1924, defendant ordered 4,500 of the trees shipped. January 5th, it ordered shipment of the rest of the plants covered by the contract. On the night of January 5th the thermometer dropped to freezing at Silverhill, which appears to be the weather bureau station nearest the tract on which the plants were growing. January 6th, 7th, and 8th, temperatures of 13, 14, and 22 were registered. What effect the temperatures of 6th and 7th had on Satsuma trees in that neighborhood does not appear from the record; but many trees survived without serious injury. On the night of the 8th, defendant communicated with plaintiff by telephone, requesting plaintiff to "hold the trees in the ground, * * * not to dig and ship any of those trees that he [defendant's manager] had given me [plaintiff's manager] a written order for, as there was a freeze," or it may be that defendant peremptorily ordered no more trees to be shipped until further orders. As to this, the evidence is in conflict. Next morning plaintiff's manager visited the nursery, found that digging had already begun, and ordered it to continue. The temperature at that time was not dangerous to Satsuma trees. Thereafter the entire number of trees contracted for were dug, packed, and shipments completed on or shortly before January 14th; defendant being informed as shipments were made. Plaintiff's manager further testified, referring to an occasion when (January 13th) defendant's manager visited the Loxley Farms place and notified plaintiff that the trees would not be accepted: "Then, all the trees were dug but not packed when Abbot [defendant's manager] canceled the order." At that time all the trees had been dug, some of them had been shipped, some of them were being packed. Defendant refused to accept any of the shipments, but what became of the trees does not appear, nor was it shown whether the freeze had killed or injuriously affected them. Defendant's manager testified that on the 13th he looked at the trees then under the shed, "but, of course, you could not tell anything at all about the trees that soon after a freeze." The foregoing is a statement of what appears to us to be the controlling facts of the case; but, we may add, on January 9th plaintiff wrote to defendant that it (plaintiff) could hardly grant defendant's request for delay, as it (plaintiff) needed the ground for a crop of potatoes, and by delay its labor would be disorganized, but that is considered to be of no importance. It had no effect upon the legal rights of the parties any more than, in the circumstances, did the freeze which they had not foreseen, and which evidently took them unawares.

[1] It is clear enough that in formulating the contract the parties had not in mind the contingency that the plants, the subject of the contract, might be injured or destroyed by temperatures such as prevailed in that locality (Baldwin and Mobile counties) from January 5 to 8, 1924—temperatures quite unusual in that vicinity. The contract did provide that "all deliveries to be made hereunder by party of the first part [plaintiff] are to be made subject to strikes, weather conditions, or other matters or contingencies beyond their control"; but that was a stipulation concerning shipments merely, and was entered into for the convenience of plaintiff only. It does not appear to have any relation to the condition of the plants not affecting the convenience or possibility of shipment; nor does it appear that plaintiff had any occasion to avail itself of the benefit of the stipulation; nor could anything be clearer than that the parties, having overlooked the contingency of a dangerous freeze, and being doubtful of their legal rights under the contract, each maneuvered to place the loss, if any there should be, upon the other. But plaintiff had sold, and defendant had purchased, not trees to be identified in the future, but "that block of Satsuma nursery trees growing on the Moss farm of the party of the first part," meaning all such trees growing on the designated farm at the time of the contract, delivery and payment to be made, as the contract shows, within three months, approximately, from the date thereof.

As we have indicated, the record affords no information as to the condition of the trees at the time of shipment; it is to be inferred that they had been exposed to dangerously low, but not necessarily destructive, temperatures, with what result we are not informed. We need not consider, therefore, what may have been the rights of the parties had the life of the trees been destroyed or their value materially impaired by the freeze. Accepting defendant's version of its communication of date January 8th, that communication, it is clear, did not avoid the contract, nor did it inform plaintiff that defendant intended to avoid the contract in any event. At best for defendant it was nothing more than a request for delay. Further, accepting, for the argument only, defendant's apparent theory that it had a right to countermand its orders of January 1st and 5th, the contract remained thereafter, and after the countermand of January 8th, in full force and effect, imposing on defendant the obligation to order the trees shipped on or before January 15th, and to pay for them in full on that day.

As we have shown, on January 13th defendant repudiated the contract. But defendant's repudiation did not avoid the con-

tract, though it constituted an anticipatory breach on its part. Plaintiff's rights under the contract remained unimpaired. It had the right to ship the trees on January 15th or within 10 days thereafter, whether ordered or not, and on the named date it was entitled to have its money. Nor did any question as to plaintiff's duty to minimize damages arise upon defendant's repudiation, for then all the trees had been wholly or partially prepared for shipment—all of them had been dug—and plaintiff under its contract had no recourse but to ship them. Nor do we think the court or jury were authorized by the evidence to hold that plaintiff violated the contract when, after the communication of January 8th, it continued to dig and pack the trees which, in any event as to orders in the meantime, it was entitled to ship on January 15th; certainly not in the absence of evidence going to show that the trees were injured by being dug or dug and packed so far in advance of shipment to be made on the 15th. The contract armed plaintiff with an option to ship on the 15th, whether the trees were ordered before that or not; it contained no stipulation against earlier digging and packing which must have preceded shipment. Our conclusion is that plaintiff executed the contract according to its reasonable interpretation, as it was entitled to do, defendant's request for delay and its later denunciation of the contract to the contrary notwithstanding. Defendant's loss must therefore be attributed to its refusal to accept the plants when shipped to it.

[2-4] The jury, acting apparently upon an alternative left open to them by the court's instructions, refused to find for plaintiff under the counts declaring upon the acceptances, but based their verdict upon the evidence tending to show—as some of it may possibly be construed—that between 4,500 and 5,000 trees had been made ready for shipment when defendant first requested that shipments be deferred. If uniformity of value among the trees be assumed, this would mean that the verdict intended to give plaintiff a recovery for the trees so prepared. In the event hypothesized, plaintiff's recovery would have been upon the common count, quantum valebant. But there was no evidence of the value of the trees so prepared for shipment. It may be safely assumed that the trees differed in value—some of them were two feet in height, some one foot, and others were nothing more than dormant buds; i. e. grafted trees in which the buds had not yet shown signs of life. There was then no average value, nor was there any average value of the trees in each group. Upon this status of the evidence defendant (appellant) bases an argument that plaintiff was entitled in any event to recover nominal damages only. Some of its refused charges affirmed this theory of the case; but our judgment is that, on the undisputed evidence—the controlling facts were undisputed —plaintiff was entitled to verdict and judgment for the full amount of the agreed price of all the trees growing on the designated tract, and that the court, in the matter of special instructions given and refused, committed no error prejudicial to defendant, since the only effect of such rulings, as applied by the jury, was to diminish plaintiff's rightful recovery. But plaintiff has not complained in a way cognizable on this appeal. The assignment of error, based upon the action of the court on overruling the demurrers to counts 6 and 7, cannot be sustained. Count 6, at least, was a good count. It alleged the contract, by reference as it might (Mattingly v. Houston, 167 Ala. 167, 52 So. 78), plaintiff's performance, and defendant's failure to pay; that being all defendant had to do. The assignment is joint, and cannot be sustained, whatever might be said of count 7 of the complaint.

It results that the judgment must be affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.